UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RICKEY BATES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 435 (JMB) |
| | ) | |
| MICHELE BUCKNER,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Rickey Bates's petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (ECF No. 1).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I.      Procedural Background**

Petitioner Rickey Bates ("Petitioner") is presently incarcerated at the South Central Correctional Center pursuant to the judgment and sentence of the Circuit Court of Saint Louis City.  On March 6, 2014, a jury convicted Petitioner of one count of first-degree murder (Count I), in violation of § 565.020;[2] one count of first-degree robbery (Count III), in violation of § 569.020; and two counts of armed criminal action (Counts II and IV), in violation of § 571.015.  The court sentenced Petitioner to life in prison without the possibility of parole on Count I and concurrent terms of 30 years on Counts II, III, and IV.  (Judgment , ECF No. 14-2 at 75-78)  The

---

[1] Petitioner is presently incarcerated at the South Central Correctional Center  ("SCCC") in Licking, Missouri.  Inasmuch as Michele Buckner  is superintendent of  SCCC  and thus is Petitioner's custodian, she should be substituted for Jeff Norman as proper party respondent. Rule 2(a), Rules Governing Section 2254 Cases in United States District Courts.

[2] All statutory references are to Mo. Rev. Stat. unless otherwise specified.

1

Missouri Court of Appeals affirmed Petitioner's convictions and sentences on direct appeal. State v. Bates, 464 S.W.3d 257, 260 (Mo. App. E.D. 2015) (ECF No. 14-5).  Petitioner's motion for post-conviction relief, pursuant to Missouri Supreme Court Rule 29.15, was denied without an evidentiary hearing.  (Findings of Fact & Conc. of Law ("FFCL"), ECF No. 14-6 at 74-75).  On June 6, 2017, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Bates v. State, Cause No. ED104383 (June 6, 2017) (ECF No. 14-9).

On March 21, 2018, Petitioner timely filed his petition for relief pursuant to 28 U.S.C. § 2254.  In the instant petition, Petitioner asserts a single ground for relief.  Petitioner contends that his trial attorney provided ineffective assistance because that attorney failed to timely object to the prosecutor's improper closing argument concerning the lesser included offense of Second Degree Murder.  (Petition, ECF No. 1 at 5)  Respondent concedes that Petitioner properly presented this claim to the Missouri Court of Appeals.

## II.     Factual Background

On March 4, 2011, at 8:23 p.m., police officers responded to a call of shots fired.  (ECF No. 14-5 at 1)  The police found a vehicle of a victim, Antoine Shaw ("Shaw"), on the sidewalk against a street sign with the engine running and doors closed and locked.  Id.  Shaw was dead in the driver's seat.  Id.  He had suffered several gun shots to the head.  Id. at 1-2.  His pockets were turned inside out, and he was holding a bag of marijuana.  Id. at 2.  A second bag of marijuana was found in the center console, along with $180 in currency in the glove compartment.  Id.

Shaw had gunshot entrance wounds on the right side of his face and exit wounds on the left side.[3]  Two .38 caliber bullets were recovered from Shaw's body, one in his left scalp and

---

[3] Stippling, or tattooing, which occurs when a gun is fired close to the skin, was found on the right side of Shaw's nose.  Id.

2

the other in the cranial cavity on the left side.  Id.  Police also found four bullet holes in the driver's side door and recovered five bullets from the interior of the vehicle.  Id.  Bullets recovered,[4] from the victim's body and his car, were determined to have been fired from the same gun.  Id.

Petitioner's cousin, Quintavian Rogers ("Rogers"), was friends with Shaw and heard through a family rumor that Petitioner may have been involved in Shaw's death.  Id.  Under the guise of research for a school report on serial killers, Rogers surreptitiously recorded Petitioner confessing to the crime while they sat in Rogers's car.  Id.  During this conversation, Petitioner described how he killed Shaw and how Shaw's body was positioned.  Id.  Per this recording, Petitioner was angry with Shaw, id., and knew he was making a lot of money installing car stereos (Appellant's Statement, Brief, and Argument , ECF No.14-7 at 10), so Petitioner planned to rob Shaw.  (ECF No. 14-5 at 2-3)  After Shaw gave Petitioner some marijuana, Petitioner "upped" his gun, shot Shaw in the head one time, and left.  (ECF No. 14-5 at 3)  Petitioner then returned to the car to find Shaw still breathing, so he shot him again, firing a total of five bullets.  Id.  Petitioner stated he used a .38 caliber handgun.  Id.  Petitioner also stated that he was high on drugs at the time of the crime.  (ECF No. 14-7 at 10)  Rogers ultimately brought the recording to the police, hoping they could help Rogers's mother obtain a sentence reduction on a federal drug conviction and because Rogers believed Petitioner was not remorseful for killing Shaw.  Id.

Two weeks later, Petitioner was arrest by the police.  Id.  After being advised of his Miranda rights, Detectives Lon Ray ("Ray") and Scott Sailor ("Sailor") conducted a recorded interview of Petitioner.  Id.  Petitioner first denied knowing Shaw, having any involvement in his

---

[4] Two of the bullets recovered from the vehicle were too damaged to make a comparison.  Id.

3

murder, or being the person on the recording taken by Rogers.  Id.  Approximately 15 to 20 minutes later, after Detective Sailor told Petitioner he was being charged with murder and robbery, Petitioner stated he wanted to tell the detectives what happened.  Id.  The detective reactivated the recording and re-advised Petitioner of his Miranda rights.  Id.

During this second interview, Petitioner told detectives that a man named A.J. or Arkeith Hill ("Hill") contacted Shaw to arrange a meeting to get some marijuana.[5]  Id.  While Petitioner was standing in the grass outside the car (ECF No. 14-7 at 12), Hill got in the car with Shaw and tried to grab the marijuana from him (ECF No. 14-5 at 3).  Shaw put Hill in a headlock and would not let go, id., so Hill started to yell for Petitioner to "get him off me." (ECF No. 14-7 at 12)  Petitioner, using the snub-nosed .38 caliber handgun provided to him by Hill, shot Shaw in the head.  (ECF No. 14-5 at 3)  Petitioner took money out of the car's armrest, and he and Hill fled the scene.  Petitioner then told the police that Hill took the handgun from Petitioner, returned to the car, and shot Shaw several more times.  Id.

At trial, Detective Ray testified that, as a part of their investigation, he obtained Shaw's cell phone records, which indicated Shaw had received a phone call about an hour before his murder.  Id. at 4.  Further investigation revealed this call was initiated from Petitioner's mother's phone,[6] id., a fact which was highlighted during the State's rebuttal argument to demonstrate Petitioner had been lying to the police in his second interview about who arranged the meeting with Shaw.  (ECF No. 14-7 at 15)  Other evidence at trial included the testimony of Jarvis Bell ("Bell"), Petitioner's cellmate while he was awaiting trial.  (ECF No. 14-5 at 3)  Bell testified

---

[5] Near the end of the interview, Petitioner repeated to the detectives that he had not been the one to call Shaw that night to arrange the meeting.  (ECF No. 14-7 at 12)

[6] This was the same phone number Petitioner gave as his emergency contact number.  Id.

4

that Petitioner told him he had a disagreement with a man over a marijuana sale.  Id.  According to Bell, Petitioner later called this man, purportedly to buy more marijuana, but then Petitioner shot the man upon his arrival.  Id.

Prior to closing arguments, the court gave the jury their instructions.  The court instructed the jury:

> As to Count I, if you do not find the defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>> First, that defendant committed murder[7] in the first degree as submitted in Instruction 7,[8] and
>> Second, that Antoine Shaw was killed by being shot in the head, and
>> Third, that Antoine Shaw was killed as a result of the perpetration of that robbery in the first degree,
>> then you will find the defendant guilty under Count I of murder in the second degree.
>> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

---

[7] Petitioner was convicted of First Degree Murder.  Petitioner did not raise any issue with respect to the prosecutor's closing argument in his direct appeal.  Rather, the first time the issue was raised was in his Rule 29.15 motion for post-conviction relief when Petitioner submitted that the prosecutor's argument misstated the law and his attorney should have objected to that argument.

[8] Instruction No. 7 is the instruction for Count II, armed criminal action in relation to the crime of murder in Count I. (ECF No. 14-2 at 52)  Thus, Instruction No. 5 is also flawed in that it references an incorrect instruction, regardless of whether the instruction was meant to incorporate the crime of robbery in the first degree or murder in the first degree.  The instruction for robbery in the first degree can be found in No. 9.  Id. at 54.  The instruction for murder in the first degree can be found in No. 5.  Id. at 50.

(Jury Instructions , ECF No. 14-2 at 51)  This instruction tracked the appropriate Missouri Approved Instructions.  (ECF No. 14-9 at 7)

During the closing arguments of the trial, the prosecutor made the following statement:

> But if you listen to what the [Trial] Court has told you in the very first paragraph with regard to Murder in the Second Degree is that you don't reach that instruction, you don't even consider that, unless all 12 of you unanimously agree that I [Prosecutor] was unable to prove that this was First Degree Murder.  All right?  Because they kind of go up in severity.  And they say, well, you start with the most serious and you figure out, did I prove that?  Only if all 12 of you say, no, you couldn't prove the most serious do you then get to consider the lesser, okay?

[Trial Transcript, ECF No. 14-2)  Defense counsel did not object to the prosecutor's argument.

### III.   Ground Raised and Analysis

Petitioner asserts a single ground for relief in this Court.  Petitioner contends that his trial attorney provided ineffective assistance because that attorney failed to timely object to the prosecutor's improper closing argument concerning the lesser included offense of Second Degree Murder. (Petition, ECF No. 1 at 5)

#### A.   Legal Standards

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11)).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Sittner v.

7

Bowersox, No. 4:12 CV 1156 CDP, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted). A reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

### B.  Discussion

Petitioner asserts a single ground for relief in this Court. Petitioner contends that his trial attorney provided ineffective assistance because that attorney failed to timely object to the prosecutor's improper closing argument concerning the lesser included offense of Second Degree Murder. (Petition, ECF No. 1 at 5) From the record before the Missouri Court of Appeals, the problem with the prosecutor's closing argument was that it misstated the law in Missouri by effectively telling the jury that it could not reach the lesser included offense unless it first acquitted Petitioner on the more serious offense. This was referred to as an "acquittal-first" closing argument. (ECF No. 14 at 2)

9

The post-conviction court found, setting aside the question of whether counsel was in fact ineffective for failing to object, there was not a reasonable probability of prejudice to Petitioner from trial counsel's failure. (ECF No. 14-9 at 9)  First, the trial court accurately tendered the appropriate Missouri Approved Instructions. Id.  According to the Missouri Supreme Court, so long as the jury was properly instructed, a misstatement of law by the prosecutor during closing argument does not give rise to a finding of prejudice under the Strickland test. Id. (citing Tisius v. State, 183 S.W.3d 207, 217 (Mo. banc 2006)).  Second, the "acquittal-first" closing argument was not prejudicial and had no effect on the verdict given the overwhelming evidence of Petitioner's guilt. Id. at 8 (citing State v. Johnson, 284 S.W.3d 561, 574 (Mo. banc 2009)).

The Missouri Court of Appeals found that the jury was properly instructed in this matter. As outlined above, the instructions included with the record provided to this Court included mark-ups which introduce some ambiguity to the issue.  Petitioner has not raised any issues with the instructions themselves and our Court need not now be overly concerned with the potential that the instructions were flawed  because the Missouri Court of Appeals also concluded that Petitioner suffered no prejudice from the prosecutor's "acquittal-first" closing argument.  In particular, the Missouri Court of Appeals concluded  that "there was evidence to support [Petitioner's] conviction, including, but not limited to, [Petitioner's] recorded admission of guilt and multiple guns shot wounds discovered on the Victim. Any alleged impropriety in the State's closing argument cannot be found to have been decisive to the jury's decision. " See (ECF No. 14-9 at 9)  Accordingly, the determination by the Missouri Court of Appeals that there was no prejudice given the overwhelming evidence of Petitioner's guilt was not unreasonable. See (ECF No. 14-9 at 8); (ECF No. 14-5 at 13); Sinisterra v. United States, 600 F.3d 900, 911-12 (8th Cir. 2010);  Reed v. Norris, 195 F.3d 1004, 1006 (8th Cir. 1999) (finding it "unnecessary to discuss

10

the reasonableness of counsel's conduct because, given the overwhelming evidence of Reed's guilt presented at trial . . . it would be impossible for him to demonstrate prejudice under Strickland.") (citing Strickland, 466 U.S. at 697)).

In reaching this conclusion, the Missouri Court of Appeals properly cited and reasonably applied the Stickland standard, and the ultimate conclusion that Petitioner suffered no prejudice because of the overwhelming evidence of guilt was not unreasonable and is, therefore, entitled to deference by this Court. See 28 U.S.C. § 2254(d). Thus, Petitioner is not entitled to habeas relief.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Rickey Bates for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued, because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day, December, 2020.